1  ELLEN M. BRONCHETTI (Cal. Bar No. 226975)
   ebronchetti@mwe.com
2  ALICE KWAK (Cal. Bar No. 312939)
   akwak@mwe.com
3  McDERMOTT WILL & EMERY LLP
   415 Mission Street, Suite 5600
4  San Francisco, California 94105
   Tel:  628.218.3800
5  Fax:  628.877.0107

6  Attorneys for Defendant
   NATIONAL EXPRESS TRANSIT
7  CORPORATION and NATIONAL EXPRESS, LLC

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | CHAUENGA M HAKEEM, on behalf of | CASE NO. |
   herself and others similarly situated,
12 |                                 | **DEFENDANTS' NOTICE OF** |
   |              Plaintiff,         | **REMOVAL OF CIVIL ACTION** |
13 |                                 | **PURSUANT TO 28 U.S.C. SECTIONS** |
   |         v.                      | **1331, 1332, 1441, 1453 AND 1446** |
14 |                                 | **(FEDERAL QUESTION &** |
   NATIONAL EXPRESS TRANSIT;          **SUPPLEMENTAL JURISDICTION,**
15 NATIONAL EXPRESS, LLC;            **DIVERSITY JURISDICTION AND**
   NATIONAL EXPRESS TRANSIT           **CLASS ACTION FAIRNESS ACT)**
16 CORPORATION; and DOES 1 to 100,
   inclusive,                        CCSC Case No. C19-00452
17
   |              Defendant.         | [State Court Complaint Filed: |
18 |                                 |  March 1, 2019] |

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants NATIONAL EXPRESS TRANSIT CORPORATION and NATIONAL EXPRESS LLC (collectively, "Defendants"), hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332(a), 1441(b), 1453, and 1446 to effect the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of Contra Costa, Case No. C19-00452, to the United States District Court for the Northern District of California.

This Court's original jurisdiction over this action is based upon the existence of a federal question.  The alleged conduct of which Plaintiff complains was subject to a collective bargaining agreement between Defendants and a labor union that represented Plaintiff during his employment with Defendants.  As such, Plaintiff's claims are substantially dependent upon the interpretation of a collective bargaining agreement ("CBA").  Plaintiff's claims are, therefore, preempted under Section 301 of the Labor Management Relations Act ("LMRA").

This Court also has original jurisdiction over this action pursuant to its diversity jurisdiction because this is a civil action between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs. Because these requirements are met, this entire action is subject to removal to federal court.

Finally, this Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA").  Removal is proper under 28 U.S.C. sections 1332(d), 1441, 1453 and 1446, because minimal diversity exists and the amount in controversy exceeds $5,000,000.

- 1 -
DEFENDANTS' NOTICE OF REMOVAL

1    In support of this removal, Defendants states the following:

2    **I.    <u>BACKGROUND</u>**

3    1.    Plaintiff Chauenga Hakeem ("Plaintiff") is a former employee of

4    National Express Transit Corporation ("NETC").  During the relevant time period,

5    Plaintiff was a member of a bargaining unit represented by the International

6    Brotherhood of Teamsters Local Union No. 166 (the "Union").  Accordingly, the

7    terms and conditions of Plaintiff's employment were subject to a collective bargaining

8    agreement ("CBA").  A true and correct copy of the CBA is attached hereto as

9    **Exhibit "A."**

10    2.    On March 1, 2019, Plaintiff, individually and on behalf of all persons

11    similarly situated, filed a Complaint in the Superior Court of California, County of

12    Contra Costa, Case No. C19-00452 ("the Complaint").  A true and correct copy of the

13    Complaint is attached hereto as **Exhibit "B."**

14    3.    In the Complaint, Plaintiff asserted nine causes of action against

15    Defendants arising out of her employment with NETC.  Specifically, Plaintiff brought

16    claims for: (1) failure to pay wages for all hours of work; (2) failure to pay wages for

17    all time worked at overtime; (3) failure to provide meal periods and meal period

18    premium wages; (4) failure to provide rest periods and rest period premium wages; (5)

19    failure to timely pay employee wages; (6) failure to pay all accrued and vested

20    vacation/PTO wages; (7) failure to provide accurate wage statements; (8) failure to

21    timely pay final wages; and (9) unfair competition in violation of Business and

22    Professions Code section 17200, *et seq*.

23    4.    The Complaint did not expressly enumerate any claim under federal law

24    and omits that the terms and conditions of Plaintiff's employment were subject to a

25    CBA.

26    5.    Defendants filed their Answer to the Complaint in Superior Court on

27    April 11, 2019.  A true and correct copy of the Answer to the Complaint is attached

28    hereto as **Exhibit "C."** Defendants filed their First Amended Answer to the

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

1    Complaint in Superior Court on April 12, 2019.  A true and correct copy of the

2    Amended Answer to the Complaint is attached hereto as **Exhibit "D."**

3        6.    Venue is proper in this Court pursuant to 28 U.S.C. § 84(c) and 1391.

4    **II.    TIMELINESS OF REMOVAL**

5        7.    Defendants were served with the Complaint on March 15, 2019.  This

6    Notice of Removal is timely filed in that it has been filed within thirty (30) days after

7    the receipt of the Summons and Complaint by Defendants, as required by 29 U.S.C. §

8    1446(b).  True and correct copies of the Summons are attached hereto as **Exhibit "E."**

9    **III.    FEDERAL QUESTION JURISDICTION UNDER 29 U.S.C. § 185**

10    **(LABOR MANAGEMENT RELATIONS ACT § 301)**

11        8.    This Court has original jurisdiction under 28 U.S.C. § 1331, and this

12    case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a

13    civil action that presents a federal question.

14        9.    Plaintiff's claims are either based upon or preempted by federal law,

15    specifically Section 301 of the LMRA ("Section 301").  29 U.S.C. § 185.  Under

16    Section 301, "[s]uits for violation of contracts between an employer and a labor

17    organization representing employees in an industry affecting commerce . . . may be

18    brought in a district court for the United States having jurisdiction of the parties

19    without regard to the amount in controversy or without regard to the citizenship of the

20    parties." *Firestone v. Southern Calif. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

21        10.    Section 301 of the LMRA provides a basis for federal jurisdiction, and

22    authorizes federal courts to develop a federal common law of CBA interpretation.

23    *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).  To ensure

24    uniform interpretations of collective bargaining agreements, federal common law

25    preempts the use of state law in collective bargaining agreement interpretation and

26    enforcement. *Lucas Flour Co.*, 369 U.S. at 103-04; *Lingle*, 486 U.S. at 411.

27        11.    Section 301 has specifically been held to preempt California state law

28    claims that are substantially dependent upon interpretation of a CBA. *Firestone*, 219

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

DEFENDANT'S NOTICE OF REMOVAL

F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").

12.     Adjudicating Plaintiff's Complaint will require interpretation of the CBA. Thus, Section 301 preempts these causes of action. *See, e.g., Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-406 (1988) ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted").

**A.     Plaintiff's Employment Was Governed by a CBA.**

13.     Plaintiff was an employee of NETC, working briefly from September 18, 2018 to December 14, 2018 earning $14.25 per hour as a part-time bus driver. At all relevant times alleged in the Complaint, the terms and conditions of Plaintiff's employment were subject to a CBA between NETC and the Union.

14.     At all relevant times alleged in the Complaint, NETC has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

15.     The Union is a labor organization in which certain employees of NETC participate and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge. At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

16.     Article I of the CBA specifically states that the Union is the sole bargaining agent for covered employees for the purposes of collective bargaining to

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

establish rates of pay, hours of work and other conditions of employment.  (Exhibit A, p. 7.)

17.    Thus, Plaintiff's claims require substantial interpretation of a CBA between an employer and a union.  Accordingly, the action is also entirely preempted by Section 301 of the LMRA, 29 U.S.C. § 185.

**B.    Plaintiff's Claims are Preempted by the LMRA Because They Require Substantial Interpretation of a CBA.**

**1.    Plaintiff's Failure to Reference Section 301 of the LMRA in Her Complaint Does Not Preclude Removal**

18.    The Complaint omits the fact that Plaintiff was a member of the Union and employed by NETC through a CBA.  However, a plaintiff may not be permitted to "artfully plead" her complaint to conceal the true nature of the complaint."  *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993,997 (9th Cir.1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement).  Thus, the fact that Plaintiff has not made specific reference to Section 301 in her Complaint does not preclude removal.  The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301.  *See Lippitt v. Raymond James Financial Servs., Inc.,* 340 F.3d 1033, 1041 (9th Cir. 2003).  Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction."  *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009).

19.    An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

20.     Here, the claims asserted in Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991). To analyze Plaintiff's claims, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

### 2.     Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Various Provisions of the CBA.

21.     The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA. Thus, Plaintiff's claims cannot be adjudicated without interpretation of numerous CBA provisions that govern Plaintiff's employment.

22.     Plaintiff asserts the following claims: (1) failure to pay wages for all hours of work; (2) failure to pay wages for all time worked at overtime; (3) failure to provide meal periods and meal period premium wages; (4) failure to provide rest periods and rest period premium wages; (5) failure to timely pay employee wages; (6) failure to pay all accrued and vested vacation/PTO wages; (7) failure to provide accurate wage statements; (8) failure to timely pay final wages; and (9) unfair competition. The applicable CBA contains specific language governing time worked, wages, overtime, pay periods, and meal and rest periods. The CBA also provides for a grievance process and requires binding arbitration to resolve any disputes arising under the CBA, including disputes as to the interpretation of application of any of the express provisions of the CBA. Resolution of Plaintiff's claim will require the Court to interpret, at a minimum, all of these provisions.

23.     **Wages, Hours, and Overtime.** The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to pay periods, pay for overtime, and vacation pay. (Exhibit A, pp. 37-44).

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

The focus of Plaintiff's wage claims is that Plaintiff and others similarly situated were not compensated for all time under the control of Defendants.  Assuming, *arguendo*, that Plaintiff's claim is valid, the CBA expressly provides for compensation of all hours worked, including overtime.  (Exhibit A, pp 37-39).  Section 15.2 of the CBA also states that "[e]mployees will be paid bi-weekly.  The Employer reserves the right to change the pay period and pay day.  The Employer will provide the Union and employees with at least two (2) weeks advance notice of any change and up to thirty (3) days advance notice where reasonably practical."  (Exhibit A, p 39.)  To the extent Plaintiff has claims regarding untimely payment of employee wages, the CBA will need to be interpreted in order for the Court to determine whether the exemption built into Labor Code section 204(c), which provides, "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees" applies here.  The CBA also expressly provides for accrual of vacation pay and payout of unused vacation days for employees who terminate their employment, which will also require interpretation to determine the applicability of the exemption provided under Labor Code section 227.3.  (Exhibit A, pp 40-44).

24.    **Meal and Rest Periods.**  The CBA provides for meal and rest periods, and expressly lays out the conditions under which employees are entitled to such breaks.  (Exhibit A, pp 50-51).  Moreover, the CBA expressly calls for final and binding arbitration for any and all disputes concerning meal periods.  (Exhibit A, p 50).  Thus, Plaintiff's rights to rest and meal periods substantially depend on an analysis of the CBA.

25.    **Grievance and Arbitration Procedure.**  As set forth above, the grievance and arbitration procedure laid out in the CBA covers "any dispute between the Employer and the Union or between the Employer and any employee as to the interpretation or application of any of the express provisions of this Agreement."  (Exhibit A, p. 32).  Further, Plaintiff's claims for wages must be arbitrated, as the

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

CBA requires arbitration of claims as the exclusive remedy for any claims relating to wages, such as claims relating to overtime pay and meal periods. (Exhibit A, p. 34). The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142, fn. 18 (1994). Here, the parties have so agreed, and the claims are therefore subject to arbitration as discussed above. Accordingly, an alleged violation of the CBA is subject to the grievance procedures set forth therein. As all of Plaintiff's claims are in essence alleged violations of the CBA in place, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze Plaintiff's claims in this case. That is, the Court will be required to determine whether Plaintiff was first required to exhaust the grievance procedures, whether she did in fact exhaust those procedures, and whether they agreed to arbitrate all or some of her claims – which are all questions reserved for federal courts under the LMRA.

26. Accordingly, Plaintiff's claims are substantially dependent upon the interpretation of the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all of the conduct which forms the basis for Plaintiff's Complaint, and thus are essential to the resolution of Plaintiff's claims. As such, each of Plaintiff's claims arises under Section 301 of the LMRA, and is therefore preempted by federal law. Removal to federal court is warranted.

## IV. **SUPPLEMENTAL JURISDICTION**

27. To the extent there are some claims alleged in the Complaint that do not raise federal questions (and/or are not preempted by Section 301 of the LMRA), such claims are removable under 28 U.S.C. § 1441(c) and, pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367, because they relate to and emanate from the same employment relationship between Plaintiff and Defendants that is the subject of the federal question claims. This Court has jurisdiction over such state law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. §1367(a),

DEFENDANT'S NOTICE OF REMOVAL

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

because they are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution, and they are substantially related to and rise out of the same nucleus of operative facts as Plaintiff's claims arising under the LMRA such as they should be tried in one action. *See Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

## V.   DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(A)

### A.   Complete Diverse Citizenship of the Parties

28.   **Plaintiff's Citizenship:** Plaintiff alleges, and Defendants are informed and believe, that Plaintiff is, and at all times since the commencement of this action has been, a citizen and resident of the State of California.[1] To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Defendants are informed and believe, and on that basis allege, that Plaintiff was domiciled in California while she worked for NETC in California. Plaintiff therefore is, or was at the institution of this civil action, a citizen of California.

29.   **Defendants' Citizenship:** For diversity purposes, a corporation is a citizen of "every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006). Its members are viewed under the same analyses as for any other entity, such that a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A

---

[1] Complaint, ¶ 3.

DEFENDANT'S NOTICE OF REMOVAL

corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "never center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010). The relevant considerations under the "nerve center" test include the following: (a) where the directors and stockholders meet; (b) where the executives live and have their offices; (c) where the administrative and financial offices are located and the records kept; (d) where the corporate income tax return is filed; (e) where the "home office" is located; and (f) where day-to-day control of the business is exercised. *Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964).

30.     Here, Defendants are **not** a citizen of California.  At the time this action was filed and at the time this Notice of Removal was filed, NETC is and was, a corporation incorporated in the State of Delaware with its principal place of business in Lisle, Illinois.  National Express, LLC, NETC's parent company, is and was a limited liability Company also formed in Delaware.  As such, Defendants are citizens of the States of Delaware and Illinois for the purposes of removal and pursuant to 28 U.S.C. § 1332(c).

31.     **Doe Defendants**:  Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332.  *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants 1-10 does not deprive this Court of jurisdiction.

**B.     Amount in Controversy Exceeds $75,000**

32.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

Defendants can establish the amount in controversy by the allegations in the Complaint, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *Id.* at 377.

33. In measuring the amount in controversy, a court must assume that the allegations of the Complaint are true and that a jury will return a verdict for Plaintiff on all claims made in the Complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the Complaint, not what the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

34. Plaintiff does not pray for a specific dollar amount in her Complaint, nor does she offer any sort of precise calculation into her alleged damages. As such, Defendants are justified in using a 100 percent violation rate in computing the amount in controversy based on the nature of the pleaded claims. *See Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Ca. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *see also Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 237125 at *9 (S.D. Cal. Aug. 8, 2007) (allegations that "extreme workload" made it "virtually impossible" for defendant's employees to take meal periods and rest breaks warrants 100 percent violation rate assumption); *Sanchez v. Russell Sigler, Inc*., No. CV 15-01350-AB (PLAx), 2015 WL 12765359 at *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods.").

35. Assuming that Plaintiff's suit is successful, the amount in controversy

DEFENDANT'S NOTICE OF REMOVAL

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

requirement is met.[2]  *See Kenneth Rothschild Trust*, 199 F. Supp. 2d at 1001 (amount in controversy is based on assumption that plaintiff prevails on all claims).

36.    Between September 18, 2018 and December 14, 2018, Plaintiff worked approximately 39 days, and Plaintiff's regular hourly rate of pay was $14.25.

37.    Plaintiff's second cause of action for unpaid overtime alleges that Plaintiff was not paid at the legal overtime rate for working over 8 hours in a workday and/or 40 hours in a workweek.  Plaintiff requests unpaid overtime compensation, as well as, interests, costs, and attorneys' fees.  (Exhibit B, ¶¶ 24, 62).  Assuming Plaintiff had just one hour of unpaid overtime for shifts worked during the statutory period, the amount in controversy would be at least **$833.62.**

38.    Plaintiff's third and fourth causes of action are for unpaid meal period premiums and unpaid rest period premiums.  California Labor Code § 226.7 sets out a penalty of one hour of regular hourly rate of pay for each day in which a meal or rest period is not properly provided.  California law defines this extra hour of pay as a wage premium, not a penalty, for statute of limitations purposes.  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1114 (2007).  Thus, the statute of limitations for these claims is three years, and is extended an additional year pursuant to the four-year statute of limitations per California Business & Professions Code § 17200.  Plaintiff asserts missed meal and rest periods as part of her unfair competition claim.  (Exhibit B, ¶ 112).  The maximum penalty in any single day for meal and rest period violations is two hours of pay.  *See United Parcel Service, Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 65 (2011) (stating that a plaintiff may recover up to two additional hours of pay on a single work day for meal and rest break violations).  Here, Plaintiff alleges that "Defendants did not provide Plaintiff and the Meal Period Class with an

---

[2] Defendants deny all of the material allegations in Plaintiff's Complaint, denies that Plaintiff was injured in any way, and denies that Plaintiff is entitled to any damages, including interest, attorney's fees, and costs.  All numbers put forth are assumed for the purposes of calculating amount in controversy only, and are not an admission of any liability or Plaintiff's entitlement to any damages, whatsoever.

DEFENDANT'S NOTICE OF REMOVAL

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

uninterrupted meal period when they worked in excess of 5 hours.  Defendants did not have a procedure in place to pay Plaintiff and the Meal Period Class a premium wage for their missed meal periods when they did not receive a meal period" and that "Defendants' policies and procedures were to not provide employees with rest periods and to not pay employees on hour of pay at the employees' regular rate of pay for each workday that a rest period was not provided." (Exhibit B, ¶ ¶ 66, 64).  Per Plaintiff's allegations, the amount in controversy for Plaintiff's alleged unpaid meal and rest period premiums is at least **$1,111.50.**

39.    Plaintiff's fifth and eighth cause of action are for  failure to timely pay employee wages and for ensuing waiting time penalties for Defendants' alleged failure "to pay Plaintiff and members of the Waiting Time Class all wages earned and unpaid prior to separation."  (Exhibit B, ¶ 104).  California Labor Code § 210 subjects defendants to $100 for each failure to pay each employee and $200.00 for each subsequent violation, plus 25% of the amount withheld.  Plaintiff also seeks liquidated damages in an amount equal to the wages unlawfully withheld pursuant to California Labor Code § 1194.2.  (Exhibit B, ¶ 83.)  Finally, California Labor Code § 203 provides for a penalty of the employee's owed wages for 30 days.  (Exhibit B, ¶ 107).  Plaintiff worked average 8-hour shifts and had eight pay periods during the relevant time period.  Thus, the amount in controversy for penalties under Labor Code §§ 210 and 1194.2 would be at least **$9,743.00**, while Plaintiff's waiting time penalties would be at least **$3,420.00.**

40.    Plaintiff's sixth cause of action for unpaid vested vacation wages upon termination alleges that "Defendants maintained a policy in which they would not rollover vacation/PTO and/or would not pay vested vacation/PTO wages upon termination."  Plaintiff seeks her earned and vested vacation/PTO wages, plus interest thereon, for the four years preceding the filing of the Complaint.  (Exhibit B, ¶ ¶ 88, 90).  Plaintiff worked approximately 316.1 hours during her employment at NETC. The CBA allows for .01923 accrual per every hour worked after one year of

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

continuous service.  (Exhibit A, p. 41).  Assuming Plaintiff is entitled to her vested vacation wages, the amount in controversy would be at least **$86.62**

41.    Plaintiff's seventh cause of action is for failure to provide accurate and itemized wage statements.  Under California Labor Code  § 226(e)(1) an employee is entitled to recover the greater of all actual damages or fifty dollars for an initial pay period in which a violation occurs and one hundred dollars per employee for each violation in a subsequent pay period.  (Exhibit B, ¶ 98).  Plaintiff worked for eight pay periods during the relevant time period.  Here, the amount in controversy is at least **$750.00.**

42.    Plaintiff's first cause of action for unpaid minimum wages alleges that there were "times during the workday which Plaintiff and similarly situated employees were  under the control of Defendants but were not compensated and seeks to recover "unpaid minimum wage, interest thereon, liquidated damages in the amount of their unpaid minimum wages, and attorneys' fees and costs."  (Exhibit B, ¶¶ 52, 54).  Because Plaintiff seeks liquidated damages, the amount of controversy under this claim would be at least **$833.62**, which stems from Plaintiff's amount in controversy calculated for her overtime allegations.

43.    Plaintiff further demands attorneys' fees.  (Exhibit B, Prayer for Relief ¶ 5).  Claims for attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds for diversity jurisdiction.  *Chavez v. JP Morgan Chase*, No. 16-55957 (9th Cir. 2018); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (attorneys' fees included in determining jurisdictional amount where an underlying statute authorizes an award of attorneys' fees).  For Plaintiff's alleged causes of action, California Labor Code 226(3)(h), 218.5(a), and 1194(a) authorize an award of attorneys' fees.  If Plaintiff litigated this case through trial and prevailed, it is reasonable to assume that Plaintiff could seek to recover more than **$75,000** in attorneys' fees.  *See Curran v. Schools of the Sacred Heart-San Francisco,* Case Nos. A142615/A143646 (1st Dist., Div. 2 June

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

5, 2018) (unpublished) (awarding $495,549.75 in attorneys' fees to plaintiff as prevailing party on Labor Code claim for unpaid accrued vacation pay); *Silva v. Burrtec Waste Industries, Inc.,* Case No, E0628666 (4th Dist., Div. 2 July 6, 2016) (unpublished) ($212,958.00 in fees awarded to prevailing plaintiff on claims for overtime).

44.    Taking into account the calculations based on the causes of action discussed above, Plaintiff's amount in controversy is at least **$91,778.36.**  This amount <u>does not</u> include calculations for Plaintiff's claimed entitlement to unpaid minimum wages and liquidated damages.  Therefore, removal is appropriate and proper.

## VI.    <u>JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT</u>

45.    On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

46.    This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members exceeds $5,000,000 and; 4) there is diversity between at least one class member and one defendant.

47.    CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL

48.     As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

49.     Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the" jurisdictional facts exists. *Id.* at 554. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added).

50.     The United State Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* (Emphasis added.) Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 *broadly in favor of removal*…" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015)(emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

A.     **Minimum Diversity Of Citizenship Exists Here**

51.     CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

52.     As set forth above, Plaintiff's Complaint alleges that Plaintiff was domiciled in California at all relevant times herein. (Exhibit B, ¶ 3). Plaintiff also

DEFENDANT'S NOTICE OF REMOVAL

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

alleges she was employed by Defendants in a non-exempt position within the four years prior to the filing of the Complaint.  (Exhibit B, ¶ 3).  NETC's employment records further show that Plaintiff was a resident of California since she was hired in September, 2018 through her employment termination in December, 2018.  Although no evidence of domicile is required at the notice of removal stage (*cf. Dark Cherokee*, 135 S.Ct. at 554), "[p]roof of residence in a state is usually thought prima facie evidence of domicile."  *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

53.    Defendants therefore allege that Plaintiff is now at the time of this removal, and was at the institution of this civil action, domiciled in California.

54.    Accordingly, Plaintiff is now at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).

55.    Also as set forth above, for diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

56.    Under the foregoing standard, and as stated above, Defendants are now at the time of this removal, and was at the institution of this civil action, citizens of Delaware and Illinois.  NETC is and was incorporated in the State of Delaware and maintains its corporate headquarters in Lisle, Illinois.  National Express, LLC, which is NETC's parent company, was also formed in Delaware.  Lisle, Illinois is where the vast majority of Defendants' corporate and executive officers are employed.  The vast majority of Defendants' administrative functions (including that of payroll, human resources, operations and planning), are conducted in Illinois.  Illinois is also where

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

- 17 -

the actual center of direction, control and coordination for Defendants takes place. This is well established by the facts that: corporate headquarters is the actual center of direction, control and coordination of all major human resources, payroll, and administrative functions; and the respective officers for these departments work in Illinois and are responsible for developing policies and protocols for Defendants. Accordingly, Defendants' principal place of business is in Illinois.  *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp.*, 559 U.S. at 92-97 (2010).  These facts were true at the time this action was initiated and remain true at the time of this removal.

57.    In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendants are a citizen of the States of Delaware and Illinois. Thus, the minimum diversity requirement under CAFA is satisfied.

**B.    The Proposed Class Consists Of At Least 100 Members**

58.    This action has been styled as a California class action under California Code of Civil Procedure section 382.  Exhibit A, ¶¶ 1, 32.  California Code of Civil Procedure section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

59.    Plaintiff's Complaint proposes eight classes (the "California Class"):

a.    Minimum Wage Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who were not paid at least minimum wage for all time they were subject to Defendants' control";

b.    Overtime Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked more than eight hours in a workday and/or 40 hours in a workweek to whom Defendants did not pay overtime wages";

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

c.    Meal Period Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked at least 5 hours in a workday and did not receive wages to compensate them for missed first meal periods, late first meal periods, short first meal periods, and/or second meal periods";

d.    Rest Period Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked more than three and one-half hours in a day yet Defendants did not provide required rest periods of ten net minutes rest time for every four hours worked between three and one-half and six hours, six and ten hours, or ten and fourteen hours";

e.    Pay Day Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who received payment for work performed between the 1st and 15th of the month but was not compensated until after the 26th of the same month and/or performed worked between the 16th and the last day of the month but was not compensated until after the 10th of the following month for this time";

f.    Vacation Wage Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who accrued vacation time/personal time off yet Defendants did not pay all wages due for vested vacation time/personal time off upon separation of employment";

g.    Wage Statement Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the one year prior

DEFENDANT'S NOTICE OF REMOVAL

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who received inaccurate or incomplete wage and hour statements"; and

        h.    Waiting Time Class: "All current and former hourly non-exempt employees employed by Defendants in California at any time within the three years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class whose employment ended and they did not receive wages to compensate them for Defendants' failure to provide legally compliant meal periods and/or rest periods."

      60.    On the basis of their own investigation, Defendants have determined, and hereby allege, that there are more than 100 putative class members during the period beginning on the date four (4) years before the filing of the Complaint through to the time of filing of this Notice of Removal. Therefore, the proposed class consists of a least 100 members.

**C.**    <u>**The Amount in Controversy Exceeds The $5,000,000 Required Under CAFA**</u>

      61.    Without making any admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

      62.    A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").

DEFENDANT'S NOTICE OF REMOVAL

63.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00).  *See* 28 U.S.C. § 1332(d).  By demonstrating that the actual amount in controversy exceeds the threshold, Defendants do not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, *9 (E.D. Cal. Apr. 30, 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

64.    Defendants provide the following calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount in controversy under CAFA jurisdiction.  Defendants make no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor do Defendants waive their right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

65.    Based on Defendants' investigation and records, and notwithstanding that Plaintiff's class definition is vaguely defined, NETC employed on average at least 500 non-exempt employees in California at any given time within four years of the filing of Plaintiff's Complaint.  The average hourly rate that NETC paid to its non-exempt employees during this time period is approximately $15.33.

66.    Based on Defendants' investigation and records, in the four years preceding the filing of Plaintiff's Complaint, non-exempt employees in California employed by NETC worked approximately 260 days per year (52 weeks x 5 days per week) and nearly always worked at least 5 hours per workday.  To account for vacation, for purposes of the computations below, Defendants conservatively assume

DEFENDANT'S NOTICE OF REMOVAL

that these employees worked an average of 250 days per year and 5 hours per workday.

67.    During the putative class period, these employees were paid on a bi-weekly basis and issued wage statements once every two weeks.

68.    Plaintiff's alleged damages for a portion of her wage and hour claims are calculated as follows:

69.    **Meal Period Premiums:**  Plaintiff alleges that "Defendants did not provide Plaintiff and California non-exempt employees with an uninterrupted meal period when they worked in excess of 5 hours," nor did Defendants provide them with a second meal period when they worked in excess of 10 hours." (Exhibit B, ¶¶ 66, 67).  Plaintiff further alleges that "Defendants did not have a procedure in place to pay Plaintiffs and California non-exempt employees a premium wage for their missed meal periods when they did not receive a second meal periods." (*Id.*).  Plaintiff therefore claims that she and the putative class are entitled to "recover one hour of additional pay at the regular rate of compensation for each workday that Defendants did not provide all duty-free meal periods" under Cal. Labor Code § 226.7.  (*Id.* at ¶ 69).  Based on an average of 500 putative class members employed by NETC at any given time in the past four year class period, who work approximately 250 days per year at an hourly rate of at least $15.33 for a four year class period, Plaintiff's claim for meal period premiums places approximately **$7,665,000.00** in controversy. ($7,665,000.00 = $15.33 average hourly wage rate x average of 500 putative class members x 250 days each year x 4 year class period).

70.    **Rest Period Premiums:**  Plaintiff alleges that "Defendants' policies and procedures were to not provide employees with rest periods and to not pay employees one hour of pay at the employees' regular rate of pay for each workday that a rest period was not provided." (Exhibit B, ¶ 74).  Plaintiff therefore claims that she and the putative class "are entitled to recover the full amount of unpaid rest period wages" under Cal. Labor Code § 226.7.  Based on an average of 500 putative class members

DEFENDANT'S NOTICE OF REMOVAL

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

1   employed by NETC at any given time in the past four year class period, who work

2   approximately 250 days per year at an hourly rate of at least $15.33 for a four year

3   class period, Plaintiff's claim for rest period premiums places approximately

4   **$7,665,000.00** in controversy. ($7,665,000.00 = $15.33 average hourly wage rate x

5   average of 500 putative class members x 250 days each year x 4 year class period).

6   71.   The total amount in controversy based solely on Plaintiff's claim for meal

7   and rest period premiums is **$15,330,000.00**.

8   72.   Plaintiff also claims unpaid wages for overtime and for accrued and

9   vested vacation days, and seeks penalties for failure to timely pay wages, inaccurate

10   wage statements, and waiting time penalties.  These claims will increase the amount in

11   controversy even further past the jurisdictional threshold.  Furthermore, Plaintiff's

12   claim for attorneys' fees must be included in amount in controversy.  *Galt G/S v. JSS*

13   *Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute

14   authorizes an award of attorneys' fees, either with mandatory or discretionary

15   language, such fees may be included in the amount in controversy.").  Typically,

16   courts use a 25% benchmark when calculating the attorney's fees in controversy for

17   purposes of CAFA.  *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D.

18   Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014);

19   *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012).  Using the

20   standard 25% benchmark, Plaintiff's claim for attorneys' fees place, at minimum

21   **$3,832,500** in controversy.  ($15,330,000.00 x 0.25 = $3,832,500);

22   73.   Finally, although Defendants are justified in using a 100% violation rate

23   in computing the amount in controversy based on the nature of the pleaded claims, the

24   amount in controversy exceeds the jurisdictional minimum even if a 25% rate is used.

25   ($15,330,000.00 x 0.25 = $3,832,500,00 combined with at least $3,832,500,00 in

26   attorneys' fees = **$7,665,000.00**); *see Coleman*, 730 F. Supp. 2d at 1149 (C.D. Cal.

27   2010); *see also Alvarez v. Ltd. Express*, LLC, 2007 U.S. Dist. LEXIS 58148, *9 (S.D.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL

Cal. 2007); *see also Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, *16 (C.D. Cal. Apr. 28, 2015).

74.     Based on the foregoing, Defendants allege that the amount placed in controversy by Plaintiff is now at the time of this removal, and was at the institution of this civil action, greater than the jurisdictional amount of $5,000,000 required by CAFA.

**D.     No CAFA Exceptions Apply**

75.     CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5).  However, none of these exceptions are applicable here.

76.     The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as described above, Defendants are not citizens of California.  Thus, this exception does not apply.

77.     Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, this exception, too, only applies where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed in California, and Defendants are not California citizens, these exceptions also do not apply.

78.     Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities, or putative classes which number less than 100 in the aggregate.  *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Defendants are not a governmental entity, and the proposed class exceeds 100 members, these exceptions also do not apply.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

DEFENDANT'S NOTICE OF REMOVAL

## VII.  **JOINDER**

79.    Defendant is not aware of any other defendant having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

## VIII.  **NOTICE OF REMOVAL**

80.    In accordance with 28 U.S.C. § 1446(d), Defendants will provide written notice of the filing of this Notice of Removal to counsel of record for Plaintiff, and a Notice of Filing of Notice of Removal is being filed contemporaneously with the Clerk of the Superior Court of the State of California, County of Contra Costa.

81.    In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendants or filed by Defendants is attached hereto as **Exhibits A-E**, including the Complaint and Summons.

**WHEREFORE**, Defendants requests that the above action pending before the Superior Court of the State of California for the County of Contra Costa be removed to the United States District Court for the Northern District of California.

Dated: April 15, 2019                **MCDERMOTT WILL & EMERY LLP**

By: _____
ELLEN BRONCHETTI
ALICE KWAK
Attorneys for Defendants
NATIONAL EXPRESS TRANSIT
CORPORATION and NATIONAL
EXPRESS, LLC

DEFENDANT'S NOTICE OF REMOVAL